FILED

2015 Dec-10  AM 11:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **JUDY ELAINE SIMMONS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:15-cv-00631-AKK** |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Judy Elaine Simmons brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 205(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that her decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

## I.      Procedural History

Simmons, who had past relevant work experience as an administrative assistant and a freight clerk, filed her application for Title II Disability Insurance Benefits on August 6, 2012, alleging an onset date of August 6, 2012 due to

seizure disorder, chronic migraines/auras, chronic daily headaches, and depression. (R. 58, 65-66, 179, 183, 184). After the SSA denied her application, Simmons requested a hearing before an ALJ. (R. 94, 102-07, 119). At the time of the hearing on October 9, 2013, Simmons was 53 years old, had completed twelfth grade, and had not engaged in substantial gainful activity since August 6, 2012. (R. 15, 37, 183, 184).

The ALJ subsequently denied Simmons's claim on November 26, 2013, (R. 10-12, 27), which became the final decision of the Commissioner on February 8, 2015 when the Appeals Council refused to grant review, (R. 1-3). Simmons then filed this action pursuant to § 205(g) on April 14, 2015. Doc. 1.

## II.     Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.    Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A).  A physical or

mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

(5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.    The ALJ's Decision

In performing the five-step analysis, the ALJ found that Simmons had not engaged in substantial gainful activity since August 6, 2012 and therefore met Step One. (R. 15). Next, the ALJ found that Simmons satisfied Step Two because she suffered from the severe impediments of "migraines, seizure disorder, cervical spondylosis, depression, anxiety, and pain disorder." *Id.* The ALJ then proceeded to the next step and found that Simmons did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." (R. 16). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, she proceeded to Step Four, where she determined that Simmons:

> has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b) except [Simmons] is able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but may never climb ladders, ropes, or scaffolds. She is able to frequently reach to the right upper extremity in all directions except occasionally reach overhead with the right upper extremity. She must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dusts, gases, and poor ventilation. She must avoid hazards. She must work in an environment with a "moderate noise intensity level" or quieter as the Selected Characteristics of Occupations defines that term, which gives examples of light traffic, a grocery store, or a department store. She is able to work in settings with levels of illumination similar to that found in a typical office setting. [She] is able to maintain attention and concentration for 2 hours at a time with normal breaks. She is able to respond appropriately to supervisors, coworkers, and the public in a work setting. She must work in an environment that does not have stringent production or speed requirements and thus may not perform fast-pace assembly line work. She must work in an environment where changes are infrequent.

(R. 19). In light of Simmons's RFC, the ALJ determined that Simmons "is capable of performing her past relevant work" as an administrative assistant. (R. 26). Alternatively, in Step Five, the ALJ considered Simmons's age, education, work experience, and RFC, and determined that "there are other jobs that exist in significant numbers in the national economy that [Simmons] also can perform." *Id.* Therefore, the ALJ found that Simmons "has not been under a disability, as defined in the Social Security Act, from August 6, 2012, through the date of this decision . . . ." (R. 27).

## V.    Analysis

Simmons asserts that the ALJ's decision regarding her mental health impairments are not supported by substantial evidence. *See* doc. 12 at 7-13. Specifically, she disputes the weight that the ALJ accorded to the opinions of: (1) Dr. Jon Rogers, Simmons's consultative psychologist; (2) Dr. Robert Estock, the Commissioner's agency reviewing physician; and (3) Ms. Kathy Sechriest, Simmons's licensed professional counselor. *See id.* None of these contentions, however, establish that the ALJ committed reversible error.

### 1.  The ALJ did not err by affording Dr. Rogers's opinions and conclusions "some weight."

Relying on Eleventh Circuit law that an ALJ "may not arbitrarily substitute h[er] own hunch or intuition for the diagnoses of a medical professional," *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992), and that "[i]n cases of mental illness, the opinions of mental health professionals are especially important,"

*Barber v. Barnhart*, 459 F. Supp. 2d 1168, 1173 (N.D. Ala. 2006), Simmons

argues that the ALJ erred by affording the medical conclusions and opinions of Dr.

Rogers, the consulting psychologist assigned to Simmons's case, only "some

weight," *see* doc. 12 at 9-10. More specifically, Simmons takes issue with the

ALJ's disregard of Dr. Rogers's finding that her mental health impairment is

"severe" and his determination that Simmons has a global assessment functioning

("GAF") of 50.[1] *See id.*

To support her contentions, first Simmons disputes the ALJ's finding that

"Dr. Rogers's opinion of a severe and serious impairment is internally inconsistent

with his opinion of only a moderate impairment in a work setting," his mental

health examination overall, and Simmons's history of limited mental health

treatment. *See* doc. 12 at 9; (R. 25). However, although Dr. Rogers did find that

Simmons's mental health impairment was severe, the majority of his observations

focused on the normality of Simmons's mental health. Indeed, he noted that "her

appearance was good;" "[s]he was dressed appropriately;" [s]he had no remarkable

mannerisms;" "[c]onversation was normal;" "she correctly answered all 3 [math]

problems;" her "judgment was unimpaired;" she "correctly repeat[ed] 5 digits

---

[1] Although Dr. Rogers assigned Simmons a GAF score of 50, "the [SSA] has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have 'no direct correlation to the severity requirements of the mental disorders listings.'" *See Wind v. Barnhart*, 133 Fed. App'x 684, 692 n.5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). As such, the court will not consider the GAF score in any depth.

forward and 3 digits backward;" and she knew the President's name and the capital of the United States, among other, similar findings. (R. 432-3). Moreover, Dr. Rogers opined that "Simmons is able to function independently" even if "[t]he quality of her daily activities is below average." (R. 434). While Simmons struggled with certain aspects of the examination (for example, she was unable to spell the word "world" backwards, (R. 433)) and while Dr. Rogers diagnosed Simmons with depression and anxiety, he noted that "[p]hysical (migraines), as opposed to psychiatric, symptoms appear to be the major obstacle to employment" and that "[Simmons] should be able to perform most activities of daily living." (R. 434-35). He also noted that "Simmons's ability to understand, remember, and carry out instructions and respond appropriately . . . in a work setting would be *moderately* impaired." (R. 436) (emphasis added). Such findings are by definition inconsistent with a finding that Simmons's mental health is "severe," which the Commissioner defines as "significantly limit[ing Simmons's] mental ability to do basic work activities." 20 C.F.R. 404.1520(c). The ALJ's finding, then, that Dr. Rogers's findings that Simmons has good judgment, an ability to perform most actions of daily living and, in particular, only moderate impairment in a work setting were inconsistent with a finding that she was significantly limited in her basic work activities is, in fact, supported by substantial evidence.

The ALJ's decision to afford only some weight to Dr. Rogers's finding that Simmons's mental health was severely impaired is similarly supported by Simmons's limited mental health treatment. Indeed, Simmons has not been seen by either a psychiatrist or psychologist, (R. 431); is not on medication for depression or anxiety, (R. 46); told her counselor she stopped working due to epilepsy as opposed to depression or anxiety,[2] (R. 442); wrote in her migraine journal that she stopped working due to her migraines, (R. 272); and indicated in her migraine journal that many of her depressive symptoms were due to migraines or other health issues as opposed to an underlying psychological problem, (R. 261, 262, 267, 270, 284, 317, 318). Moreover, Simmons only began seeking mental health treatment from her therapist, Ms. Sechriest, in February 2013, more than six months after her alleged onset date, *see* (R. 65, 440), and even then, she only saw Sechriest on a monthly basis,[3] *see* (R. 46, 50, 440-442); *see, e.g.*, *Gray v. Colvin*, 2014 WL 3889716, at *4 (Aug. 5, 2014) (allowing an ALJ to consider limited mental health treatment when assessing weight assigned to medical experts). To

---

[2] As to the credibility of Simmons's epilepsy complaint, the ALJ noted that Dr. Robert Swillie "refused to label [Simmons] disabled because of the lack of seizure activity and the claimant's continued driving." (R. 21; 447).

[3] Elsewhere in her brief, Simmons objects to the ALJ's use of Simmons's limited mental health treatment to support her finding that Simmons's mental health impairment does not necessitate a finding of disability. Simmons argues that her purportedly poor mental health—and, presumably, resulting poor judgment—is to blame for her limited mental health treatment, so the ALJ was improper to hold Simmons's limited treatment against her. *See* doc. 12 at 11. For reasons discussed in Sections IV.2 and IV.3, the court rejects this argument and determines that the ALJ's decision to consider Simmons's limited mental health treatment is supported by substantial evidence.

the extent that Simmons argues that the inconsistency of her visits to Sechriest are excused by the fact that her husband could not take time off work to drive her the long distance to her appointments, Simmons reported (and the ALJ observed) that Simmons did not change to a more convenient counselor because "[Sechriest] came recommended," notwithstanding that other, more accessible counselors were available in a city as large as Birmingham, Alabama. *See* (R. 50). The ALJ's finding that this explanation discredits the severity of Simmons's mental health impairment—and therefore Dr. Rogers's opinion—is supported by substantial evidence.

Second, Simmons argues that Dr. Rogers's opinion that she has "a serious and severe mental impairment" is not contradicted by any other examining, treating, or reviewing source and is, in fact, supported by Seichrest's opinion. *See* doc. 12 at 9-10. As a threshold matter, the ALJ owes no deference to Dr. Rogers, as he is only a consultative psychologist. *See, e.g.*, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (holding that, because the physician had examined the claimant "on only one occasion, her opinion was not entitled to great weight"). More to the point, Simmons's argument is flawed because, in fact, Dr. Rogers's opinion is contradicted by multiple sources, including, as discussed above, his own observations. Indeed, Dr. Estock noted that Simmons was only "moderately limited" in her "ability to complete a normal workday and workweek

without interruptions from psychologically based symptoms," and he even recommended that Simmons was "not disabled," *see* (R. 80, 83). Additionally, Sechriest's treatment notes also contradict Dr. Rogers's finding that Simmons has a severe impairment due to depression or anxiety; for example, Simmons reported that she stopped working due to epilepsy as opposed to depression, and although Sechriest reported that Simmons cries easily, rarely gets out, and is easily confused, Sechriest's treatment notes never indicate that she recommended Simmons seek treatment beyond the monthly counseling sessions with her. *See* (R. 440-42).

Finally, as it relates to Dr. Rogers, the court further notes that the ALJ did not grant Dr. Rogers "no weight" or even "little weight;" indeed, she granted his opinions "some weight." *See* (R. 25). As such, she placed some weight on his recommendations and reduced Simmons's RFC accordingly to reflect her "poor concentration with some deficits on cognitive tasks" by limiting her to work environment to include "no stringent production or speed requirements," "fast-pace assembly work," or "environments where changes are []frequent." *See* (R. 19, 25). Because the ALJ's decision to grant "some weight" to Dr. Rogers's opinion on the basis that the opinion was inconsistent with other observations in his evaluation—as well as the fact that his opinion was contradicted by other examiners in the

record—is supported by substantial evidence, Simmons cannot find relief on this ground.

### 2. The ALJ did not err by affording Dr. Estock's opinions and conclusions "little weight."

Simmons also objects to the ALJ's decision to assign Dr. Estock's opinion little weight. As a threshold matter, Dr. Estock is not Simmons's treating physician but is merely a consultative examiner; therefore, his opinion is entitled to only "little weight," and "taken alone, does not constitute substantial evidence to support an administrative decision." *See Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)). Additionally, Dr. Estock's overarching recommendation regarding Simmons's application listed Simmons as "not disabled," he found that she had only "mild" restrictions on activities of daily living, and he noted that she had only "moderate" restrictions both with maintaining concentration, persistence, or pace as well as maintaining social functioning. (R. 73, 79-81). Other findings—such as that Simmons is "[n]ot significantly limited" in her ability to perform activities within a schedule, sustain a regular routine, or ability to maintain socially appropriate behavior, among other, similar findings—further support Dr. Estock's finding that Simmons is not, in fact, disabled. Based on this record, requiring the ALJ to weigh Dr. Estock's opinion more heavily and giving it increased deference would seem to only hurt Simmons's application for benefits. For this reason alone, the court

rejects Simmons's contention that the ALJ erred by failing to assign more weight to Dr. Estock's opinion.

Simmons mainly objects to the ALJ's decision to discredit Dr. Estock based on Simmons's limited mental health treatment because "the ALJ failed to consider the impact of mental illness itself" on Simmons. *See* doc. 12 at 11. Put differently, Simmons argues that the ALJ cannot appropriately consider Simmons's limited mental health treatment when determining the severity of her impairment because Simmons's alleged mental health impairments kept her from seeking treatment. In support of this position, Simmons points to *Sparks v. Barnhart*, which noted that "[c]ourts have long recognized the inherent unfairness of placing emphasis on a claimant's failure to seek psychiatric treatment." 434 F. Supp. 2d 1128, 1135 (N.D. Ala. 2006). *Sparks* addressed a claimant who had been treated for anxiety by her family doctor, referred to a psychiatrist for specialized care, hospitalized in a psychiatric unit, subjected to electroshock treatments, placed on psychotropic medication, received a diagnosis of panic disorder with agoraphobia and social phobia, suffered through multiple anxiety and panic attacks, and was unable to follow through with recommended mental health treatment such as, for example, scheduled medication. *See id.* at 1135-36. The facts in *Sparks* are not applicable here, where Simmons has not sought significant mental health treatment at all. In fact, Simmons's record establishes, for all intents and purposes, that her mental

health treatment and symptoms are much less extreme than the claimant's in *Sparks*, so the importance of "consider[ing] the impact of the plaintiff's mental health itself" is less applicable. *See id*. at 1135.

Additionally, if this court were to adopt as a blanket rule *Sparks*'s holding that a mental health claimant's mental treatment history cannot be considered when determining deference or credibility, it could insulate mental health claimants from an otherwise searching review and—perhaps more problematically—would contradict this circuit's precedent on factors an ALJ may consider when evaluating the severity of impairments. *See, e.g.*, *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984) (holding that, in addition to objective medical evidence, when evaluating a claimant's credibility the ALJ may properly consider use of painkillers, failure to seek treatment, daily activities, conflicting statements, and demeanor at the hearing); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (holding that an ALJ may consider treatment that is "entirely conservative in nature" when discrediting a claimant's testimony). Simmons offers no binding case law contradicting these controlling precedents. Additionally, the record wholly fails to support Simmons's suggestion that "her failure to follow through with recommended mental health treatment . . . [was due to] the impact of the mental illness itself." *See* doc. 12 at 11. In fact, Dr. Rogers reported that "Simmons'[s] judgment was unimpaired" and that "[i]nsight was good," (R. 434); Simmons

herself said that the reason she had not sought more aggressive counseling was due to the time and distance from Sechriest as opposed to her purported mental health symptoms, (R. 50); and Simmons reported that she was unable to follow instructions because of her migraines and epilepsy, not her alleged depression or anxiety, (R 43). Put otherwise, unlike the situation in *Sparks*, the record here does not reflect that Simmons's limited mental health treatment is, in fact, due to the effects of her purported mental illness.

Simmons also asserts that "it was improper for the ALJ to discredit Dr. Estock's opinion because Simmons lacks a history of special education," as the "lack of a history of special education does not have any bearing on whether or not her depression has caused disabling mental limitations." *See* doc. 12 at 11. However, the ALJ examined whether Simmons had a history of special education when noting that, although Simmons could not perform Serial 7s, she was able to correctly answer math problems and identify similarities between concepts, so, among other showings in the record, this fact could not support a limitation to simple tasks or an RFC that permitted her to miss one to two days of work per month. *See* (R. 25). The court notes that Simmons has cited no authority to substantiate her argument that the ALJ's decision to consider Simmons's lack of special education history when making her credibility determination was not supported by substantial evidence. As such, the court is not obligated to engage

with this argument. *See N.L.R.B. v. McClain of Georgia*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting argument and citations to authorities, are generally deemed to be waived."). Additionally, the ALJ seems to have merely noted that Simmons's difficulty with the Serial 7s was not due to a learning disability, *see* (R. 184), an observation that Simmons herself volunteered in her application for disability and that seems relevant when determining Simmons's qualification for general employment.

Moreover, to the extent that the ALJ erred in considering Simmons's special education history when assigning Dr. Estock's opinion little weight, such error is harmless: she appropriately relied on Simmons's limited mental health treatment as well as Simmons's daily activities when determining the deference to grant Dr. Estock and, ultimately, Dr. Estock opined that Simmons was not actually disabled. *See Caldwell v. Barnhart*, 261 F. App'x. 188, 190 (11th Cir. 2008) (noting that the ALJ's mistakes are subject to the harmless error rule such that, if the ALJ's findings do not contradict his ultimate findings, his decision will stand). Therefore, Simmons cannot find relief on this ground.

Accordingly, because the ALJ did not commit reversible error by relying on Simmons's limited mental health treatment or by considering her lack of special education history when assigning Dr. Estock's opinion limited weight, the court declines to remand on this ground.

3.  *The ALJ did not err by affording Ms. Sechriest's opinions and
    conclusions "little weight."*

Simmons also objects to the ALJ's assignment of little weight to Sechriest's

opinion that Simmons has "marked" and "extreme" limitations in her ability to

function.[4] In support of her argument, Simmons asserts first that the ALJ

improperly stated a medical opinion because the ALJ noted that Sechriest's

opinions "suggest that [Simmons] should be hospitalized" when Sechriest has not

recommended as much. *See* doc. 12 at 12; (R. 24). As Simmons put it, "[t]he ALJ's

rationale improperly assumes that an individual could not have marked or extreme

mental work-related limitations in the absence of any inpatient hospitalizations or

recommendation of the same." *See* doc. 12 at 12. However, while Simmons's

argument could hypothetically be true, the court notes that she cites no case law in

support of this argument and, regardless, it is not true in this instance because the

ALJ's decision to discount Sechriest's opinion is supported by substantial

evidence. Importantly, Sechriest is Simmons's therapist, and, as such, "h[er]

opinions are not an acceptable medical source to establish the existence of a

medical impairment." *See Szilvasi v. Comm'r*, 555 Fed. App'x 898, 901 (11th Cir.

2014) (relying on 20 C.F.R. § 404.1513(a), (d)(1)). Sechriest's opinion is further

---

[4] Specifically, Sechriest stated that Simmons had "marked" limitations in her activities of daily
living; maintenance of social functioning; ability to understand, carry out, and remember
instructions in a work setting, ability to respond appropriately to supervision or co-workers in
a work setting; and ability to perform simple or repetitive tasks in a work setting. (R. 437-38). She
also opined that Simmons had "extreme" deficiencies of concentration, persistence, or pace and
"extreme" impairment of ability to respond to customary work pressures. (R. 437).

discounted, as the ALJ explained, because: (1) Sechriest had a limited treatment relationship with Simmons; (2) Sechriest's opinion conflicts with the advice and counsel she gave Simmons; (3) Sechriest's opinion conflicts with Simmons's limited mental health treatment; and (4) the source of Simmons's anxiety seems to derive more from denial of disability rather than a psychological problem. *See id.*; (R. 24-25).

The ALJ's reasons for discounting Sechriest's opinion are supported by substantial evidence. First, as discussed above, Sechriest had a limited treatment relationship with Simmons. Simmons only began seeing her more than six months after Simmons's alleged onset date, and, even then, she only saw Sechriest on roughly a monthly basis. By the time of Simmons's hearing, Sechriest had seen Simmons only seven times. (R. 440-42). Moreover, as the ALJ pointed out, Sechriest counsels Simmons and her husband together, and frequently the counseling sessions include discussion of Simmons's husband's mental health issues as well as Simmons's.[5] *Id.* Second, Sechriest's "marked" and "extreme"

_____

[5] In a supplemental submission to the Appeals Council, Sechriest explained, "Mr. Simmons corroborates the information [Simmons] relates to me and shares his own objective observations in sessions." (R. 488); *see Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1162 (11th Cir. 2007) ("[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."). Although there is some evidence to support Sechriest's contention, Sechriest's treatment notes, however, indicate that she was also administering therapy to Simmons's husband; she recounted, "Husb[and] talked about his history of anxiety which is strongly in family history," "Will talk about early childhood memories of both [spouses] next session," and "Husb[and] admits p[atient]'s dep[ression] gets him down sometimes." *See* (R. 441-42). Because Sechriest's

diagnoses conflict with the advice and counsel she gave Simmons—her treatment notes do not reflect a recommendation that Simmons visit a psychologist or psychiatrist, begin taking medication, or seek therapy more often than roughly once per month.[6] *See Wolfe*, 86 F.3d at 1078 (holding that an ALJ may consider treatment that is "entirely conservative in nature"). Sechriest's treatment notes additionally reflect that Simmons stopped working "due to epilepsy" and that Simmons's depressive symptoms are likely "due to chronic pain" as opposed to an underlying psychological issue.[7] (R. 442). Finally, as discussed at length above, Simmons's limited mental health treatment overall—that she has not seen a psychiatrist, is not on medication, sees a counselor no more often than monthly,

_____

assertion that Simmons's husband only attends to corroborate her stories is not supported by Sechriest's own treatment notes, this supplemental evidence cannot support reversal of the ALJ's decision.

[6] Sechriest's notes reflect that Simmons "expressed suicidal ideations around Xmas but states she won't do it" and—*even then*—Sechriest did not document that she recommended any type of more aggressive treatment. *See* (R. 442). Presumably, by the time Sechriest began seeing Simmons a few months after this reported incident, she believed Simmons's mental health to be sufficiently stable.

[7] Assuming for the sake of argument that Simmons's depressive symptoms are caused by pain from her migraines, Simmons's noncompliance with her migraine treatment undermines her assertions as to the severity of her purported depression symptoms. Put differently, if the pain of her migraines indeed caused Simmons significant depression, the court surmises that Simmons would have been compliant on her migraine treatment regimen. As the ALJ pointed out, Simmons's "doctor wants her to take a pill daily [for her migraines], whether she has her migraines or not, but [Simmons] only takes medication when she has an aura . . . . Her noncompliance and lack of follow-up generally undermine her credibility." (R. 22, 46, 48-49); *see also Brown v. Astrue*, 298 Fed. App'x 851, 853 (11th Cir. 2008) ("The administrative law judge could consider [the claimant's] failure to comply with a treatment regimen as a factor in assessing [his] credibility.") (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275-76 (11th Cir. 2003)).

and other, similar facts—further substantiates the ALJ's determination. Put simply, no basis exists to reverse the ALJ's decision to discredit Sechriest's opinion.

As her final contention of error related to Sechriest, Simmons argues that the ALJ committed reversible error by finding that Sechriest's "[t]reatment records indicate that [Simmons's] anxiety seems to stem from the prospect of getting denied disability, rather than from psychological symptoms." *See* doc. 12 at 12 (citing (R. 24)). In denying Simmons's claim, the ALJ noted that "[s]essions [with Sechriest] focused on anxiety related to the claimant's denied disability claim" rather than an underlying psychological impairment. *See* (R. 23, 24). Objecting to this observation, Simmons argues that "when an individual sincerely believes they can no longer perform the work they have done for many years, the prospect of being denied disability benefits is a valid cause for anxiety" and notes that "Sechriest's notes also illustrate other triggers for Simmons'[s] anxiety symptoms." *See* doc. 12 at 12-13. Simmons's argument is logically flawed. Simmons cannot argue that the ALJ should have deemed her disabled simply because her anxiety about *not* receiving disability benefits is supposedly disabling. If such an anxiety could form the basis for a disability claim, every claimant would arguably qualify as disabled. In any event, Sechriest's treatment notes do reflect a preoccupation with Simmons's disability claim; in all but one therapy session, Sechriest mentioned Simmons's disability application and, at times, focused on

Simmons's anxiety surrounding her application. *See* (R. 440-42) (noting, for example, that Simmons was "[a]nxious waiting for word on S[ocial] S[ecurity] [d]isability" or that she was "anxious, fearing she'll be turned down again"). Although, as Simmons points out, the ALJ does also mention additional triggers for Simmons's depressive symptoms, those triggers serve to undermine her claim, as Sechriest writes, "P[atient] depressed [with] her many health issues" and "She's always been emotional [and] is depressed, likely due to chronic pain." *See* (R. 440). Moreover, Sechriest's treatment notes—as well as her follow up evidentiary submission—relate Simmons's anxiety as significantly stemming from loud noises (for example, that Simmons "can't stay long at a restaurant where there are lots of people and noise," (R. 440)), and the ALJ has already accommodated for this limitation by restricting her RFC to include only jobs with a "'moderate noise intensity level' or quieter." *See* (R. 19).

Therefore, based on this record—namely, that Sechriest's opinion was belied by her limited treatment history with Simmons, with her advice and counsel to Simmons, by Simmons's limited mental health treatment overall, and by the fact that it appeared Simmons's anxiety seemed focused on her disability application— the ALJ was entitled to give Sechriest's opinions little weight.

## VI.    Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Simmons is not disabled is supported by substantial evidence and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 10th day of December, 2015.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE